RANDOLPH, Circuit Judge,
dissenting:
In my view, documents originated for the sole purpose of advising the President on his pardon power are protected by the presidential communications privilege. The President alone has the “Power to grant Reprieves and Pardons for Offenses against the United States,” U.S. Const. *1137 art. II, § 2, cl. 1; he cannot delegate this authority. See The Federalist No. 74 (Alexander Hamilton). In exercising his non-delegable power to pardon, the President has historically requested and received recommendations from the Office of Pardon Attorney, as reviewed by the Deputy Attorney General. The Pardon Attorney produces documents and other information in determining what advice to give to the President. As in In re Sealed Case, this information is “generated in the course of advising the President in the exercise of ... a quintessential and nondelegable Presidential power.” 121 F.3d 729, 752 (D.C.Cir.1997). It follows that the information and documents, as well as the final recommendation, are privileged. “A President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately.” United States v. Nixon, 418 U.S. 683, 708, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974); see Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 447 n. 10, 97 S.Ct. 2777, 2792, 53 L.Ed.2d 867 (1977).
The majority agrees that the presidential communications privilege protects the Pardon Attorney’s final recommendations sent to the President. But it holds the privilege inapplicable to the drafts of those recommendations, or to any other documents the Pardon Attorney or his supervisor, the Deputy Attorney General, produce in formulating advice to the President on “Reprieves and Pardons.” U.S. Const, art. II, § 2, cl. 1. In re Sealed Case gave good reasons for holding the opposite: “In the vast majority of cases, few if any of the documents advisers generate in the course of their own preparation for rendering advice to the President, other than documents embodying their final recommendations, will ever enter the Oval Office. Yet these pre-decisional documents are usually highly revealing as to the evolution of advisers’ positions and as to the different policy options considered along the way. If these materials are not protected by the presidential privilege, the President’s access to candid and informed advice could well be significantly circumscribed.” 121 F.3d at 750.
The majority has two grounds, repeated in many different ways, for departing from this precedent. The first relies on an organizational chart, the second on a slippery slope.
The Office of Pardon Attorney is in the Department of Justice rather than at 1600 Pennsylvania Avenue. Hence the Pardon Attorney is not in “close proximity” to the Oval Office (maj. op. at 1120); he is “not close enough to the President” (id. at 1117); he is “at least twice removed from the President” because his recommendations are reviewed by the Deputy Attorney General (id. at 1120); he is too far away from the President (id. at 1114-15). I think none of this matters. The talk - actually dicta - in In re Sealed Case about operational proximity to the President, 121 F.3d at 752, was directed at ensuring that documents were generated for the purpose of advising the President.[1] There is no need to worry about that here. Despite hints to the contrary in the majority opinion, the uncontested fact in this case is that all of the Pardon Attorney’s duties and responsibilities are aimed at formulat *1138 ing advice for the President about pardons. As to documents involving the Deputy Attorney General, there is no contention that he was doing anything else than participating in the Pardon Attorney’s preparation of recommendations to the President. In these circumstances, “there is assurance that even if the President were not a party to the communications over which the government is asserting presidential privilege, these communications nonetheless are intimately connected to his presidential decision-making.” In re Sealed Case, 121 F.3d at 753.[2]
Nonetheless the majority treats as decisive the dicta in In re Sealed Case stating that the privilege applies only to information “solicited and received”[3] by the President or his close advisers and their staff, 121 F.3d at 752. It is bad enough “to dissect the sentences of the United States Reports as though they were the United States Code.” St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1993); see Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1291 (D.C.Cir.1998) (en banc). It is far worse to treat dicta in one of our opinions as if it were some sort of statute. Besides, the extraneous statement in In re Sealed Case itself rested on the following dicta in Association of American Physicians & Surgeons, Inc. v. Clinton, 997 F.2d 898, 910 (D.C.Cir.1993) (AAPS): “We believe it is the Task Force’s operational proximity to the President, and not its exact function at any given moment, that implicates executive powers.... The President’s confidentiality interest is strong regardless of the particular role the Task Force is playing on any given day.” The court in AAPS was not referring to members of the immediate White House staff. The “Task Force” was established by the President to advise him on health care legislation. 997 F.2d at 901. The majority opinion comes up with nothing to distinguish such a group, drawn from throughout the Executive Branch, from the Office of the Pardon Attorney. If the President set up an executive branch task force each time he received a pardon application and asked the members to advise him whether to grant or deny the pardon, there is no doubt that the work of each such task force would be covered by the privilege. It can make no difference that the President, instead, relies on a permanent office to perform the same function.
The majority’s other reason for not holding the privilege applicable to the Pardon Attorney is of the slippery slope variety: if the privilege applied this “would have far-reaching implications for the entire executive branch that would seriously impede the operation and scope of FOIA” (maj. op. at 1119); it “would sweep within the reach of the presidential privilege much of the *1139 functions of the executive branch” (id. at 1122); it would result in “ ‘expanding to a large swath of the executive branch a privilege that is bottomed on a recognition of the unique role of the President.’ ” Id. at 1121, quoting In re Sealed Case, 121 F.3d at 752.
The slope is slippery, the majority argues, because there is no non-arbitrary line between this case and other FOIA cases throughout the Executive Branch. The argument is invalid. The dividing line is clear, it is unmistakable and it is principled. It is a line In re Sealed Case itself recognized in distinguishing advice about “a quintessential and nondelegable Presidential power,” which is subject to the privilege, from “information regarding governmental operations that do not call ultimately for direct decision-making by the President,” which is not. 121 F.3d at 752. The vast majority of executive branch documents - those relating either to delegated responsibilities or having purposes other than advising the President on a nondelegable duty - would therefore not be swept in if the privilege were applied here.
In response to this dissent, the majority opinion tells us: “The reality is that working papers of an immediate White House adviser in the Office of the President will be far more revelatory of advice given to the President than internal Department [of Justice] documents-” Maj. op. at 1123. I do not know where the majority gets this idea. The record does not support it. It is impossible for me to understand how one can say that the Pardon Attorney’s drafts of his final recommendation to the President will reveal less about advice to the President than the internal musings of those in the President’s immediate vicinity. In short, the Pardon Attorney’s proximity to the President is not the key. It is the function the Pardon Attorney performs that should have controlled.
The majority takes comfort in the fact that some of the Pardon Attorney’s documents it has artificially excluded from the presidential privilege “will in any event remain protected pursuant to the deliberative process privilege,” thus making the “justification” for applying the presidential communications privilege “disappear[ ].” Maj. op. at 1117-18. This too is an unwarranted departure from the essential reasoning of In re Sealed Case. “The protection offered by the more general deliberative process privilege will often be inadequate to ensure that presidential advisers provide knowledgeable and candid advice, primarily because the deliberative process privilege does not extend to purely factual material.” 121 F.3d at 750. More than that, “[e]xposure of the factual portions of presidential advisers’ communications also represents a substantial threat to the confidentiality of the President’s own deliberations. Knowledge of factual information gathered by presidential advisers can quickly reveal the nature and substance of the issues before the President....” Id. In response the majority has nothing to say.
I therefore dissent.

. The majority opinion also relies on Ryan v. Dep’t of Justice, 617 F.2d 781 (D.C.Cir.1980). Ryan has nothing to do with the issue in this case. The issue in Ryan was whether a particular entity was an "agency” within the meaning of the Freedom of Information Act. Everyone agrees the Office of Pardon Attorney is an agency. The question here is whether the presidential communications privilege protects the materials the Office of Pardon Attorney and the Deputy Attorney General generate for the purpose of advising the President, a question on which Ryan had nothing to say.

. The full quotation is:
In this case the documents in question were generated in the course of advising the President in the exercise of his appointment and removal power, a quintessential and nondelegable Presidential power. In many instances, presidential powers and responsibilities, for example the duty to take care that the laws are faithfully executed, can be exercised or performed without the President’s direct involvement, pursuant to a presidential delegation of power or statutory framework. But the President himself must directly exercise the presidential power of appointment or removal. As a result, in this case there is assurance that even if the President were not a party to the communications over which the government is asserting presidential privilege, these communications nonetheless are intimately connected to his presidential decision-making.
In re Sealed Case, 121 F.3d at 752-53 (citation and parenthetical omitted).

. There is no dispute that the White House "solicits” advice from the Pardon Attorney and Deputy Attorney General. Pardon requests are addressed directly to the President, who then submits the applications to the Pardon Attorney.